**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| B&S INTERNATIONAL TRADING INC. (d/b/a B&B JEWLERY), | Civil No. 2:18-cv-11546 (KSH) (CLW) |
| *Plaintiff*, | |
| v. | |
| MEER ENTERPRISES LLC AND DC GROUP, INC. | **Opinion** |
| *Defendants*. | |

**Katharine S. Hayden, U.S.D.J.**

I.   **Introduction**

     This lawsuit arises out of a dispute over various lending and purchase agreements entered into by and between three jewelry businesses.  Between 2012 and 2014, plaintiff B&S International Trading Inc. ("B&B Jewelry") made two loans to and entered into one profit sharing agreement with defendant DC Group, Inc. ("DC Group").  DC Group eventually defaulted on both loans and, additionally, failed to share in profits per the parties' agreement.  In May 2016, amid financial difficulties, DC Group sold its assets to defendant Meer Enterprises LLC ("Meer").  Since the sale, neither DC Group nor Meer has made payments on the loans.

     In May 2019, B&B Jewelry brought this lawsuit alleging that Meer was liable for breach of contract and unjust enrichment as DC Group's successor-in-interest.  In the

alternative, B&B Jewelry alleges breach of contract against DC Group directly. Currently pending before the Court is Meer's motion to dismiss counts one through ten pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, the Court denies the motion.

## II. <u>Background</u>

The parties are all members of the tight-knit New York and New Jersey jewelry business community and have worked with each other for years. (D.E. 88 ("Amend. Compl.") ¶ 2.) B&B Jewelry is a New Jersey entity that buys, trades, and sells fine jewelry, gold, and diamonds to retail customers. (*Id.* ¶ 3.) Meer is New York-based and is also in the business of importing and selling fine jewelry. (*Id.* ¶¶ 4-5.) Its principals are Daniel and Michael Dabakarov. (*Id.* ¶ 1.) After Meer purchased DC Group's assets in 2016, it continued the company's business of manufacturing raw gold into unfinished and finished jewelry settings and selling them to jewelers and consumers. (*Id.* ¶ 5.) Meer also retains DC Group's retail name, "Unique Settings New York." (*Id.* ¶ 6.) DC Group has not yet formally dissolved, but it no longer operates a jewelry business and has limited to no assets. (Amend. Comp. ¶ 50.) During the relevant period, DC Group was led by Ozan Ekmel Anda ("Anda"). (*Id.* ¶ 4.)

### A. <u>Debts Owed to B&B Jewelry</u>

B&B Jewelry alleges that it entered into three agreements with DC Group, all of which are now in default. In the first, entered into in July 2012, B&B Jewelry loaned

DC Group 30 kilos of 24-carat gold bars. (*Id.* ¶¶ 18-19.) This loan was subject to ten percent interest annually and was to be paid monthly. (*Id.* ¶ 18.) Upon the delivery of the gold, Anda gave a signed promissory note to Behno Bekdas ("Bekdas"), one of B&B Jewelry's principals. (*Id.* ¶¶ 20-21.) In relevant part, the promissory note reads as follows:

> The undersigned Borrower ("Debtor") has received $_____ in cash and $_____ in 24 carat gold bars from _____. For value received, the Borrower promises to pay to _____ (hereinafter to as "Note Holder") with interest on the amount so advanced, at an interest rate of 10% per annum.
> Interest only payments are to be made to Note Holder in monthly installments of $_____, commencing on the 1st day of each consecutive month until this Note in paid in full. All payments shall be applied first to accrued interest and then to principal. Principal under this Note will be repaid in the same form (cash or 24 carat gold bars) as received by Borrower…. (B&B Promissory Note.)

DE 88, Ex. A. ("B&B Promissory Note").)

Although the promissory note was incomplete and contained "'blank spaces that had not been filled in," B&B Jewelry alleges that "the note was intended to, *inter alia*, memorialize the loan and DC Group's obligation for repayment." (Amend. Compl. ¶ 20.) DC Group made its monthly payments until it defaulted in March 2016. (*Id.* ¶¶ 23, 33.) B&B Jewelry now contends that there is an outstanding principal balance of 30 kilos of gold, plus interest, due under the note (*Id.* ¶ 34.)

B&B Jewelry further contends that in November 2012, it loaned DC Group an additional 24 kilos of 24-carat gold bars. (*Id.* ¶ 26; *see also* D.E. 88-3, Ex. B ("B&B Security Agreement).) In connection with this second loan, B&B Jewelry alleges that Anda gave Bekdas a security agreement signed on behalf of DC Group, which provided

that DC Group would post 25% of his shares as collateral.[1]  (Amend. Comp. ¶¶ 26, 30.)
This Security Agreement has been in default since November 2014 and B&B Jewelry
contends that there is an outstanding principal balance of 24 kilos of gold, plus interest,
due under the agreement. (*Id.* ¶ 34.)  In total, it alleges that no less than $2,300,000 is
owed under these documents.

B&B Jewelry also claims that in July 2014, it entered into an oral agreement
whereby it agreed to supply inventory (i.e., bracelets, earrings, etc.) to DC Group to sell
in its New York showroom ("Showroom Agreement")  (*Id.* ¶ 35.)  The parties agreed
to split the profits evenly, and DC Group was supposed to reimburse B&B Jewelry for
the cost of the goods and remit its share of the profits immediately upon sale, no later
than the end of 2014.  (*Id.*)  B&B Jewelry provided DC Group with $2 million worth of
jewelry for the showroom between October 2014 and December 2014. (*Id.* ¶ 36.)  DC
Group sold $600,000 worth of the merchandise, but failed to reimburse B&B Jewelry
for the cost of the jewelry or share any of the profits.  (*Id.*)

### B.   The Asset Purchase Agreement

In early 2016, DC Group needed an infusion of capital and sought out investors.
(Amend. Compl. ¶ 38.)   Anda entered negotiations with one of Meer's principals,
Daniel, who instead wanted to purchase DC Group's assets.  (*Id.* ¶ 39.)  In May 2016,

---

[1] Although the agreement only contains a signature line for Bekdas, B&B Jewelry alleges that he
represented the company as a secured party and that the loan was not made by him personally.
(Amend Compl. ¶ 29.)

the parties signed an Asset Purchase Agreement ("APA").  Meer paid $2,000,000 to DC

Group, $3,500,000 to DC Group's secured creditors, and assumed $11,046,740.65 of

DC Group's liabilities in exchange for certain of its assets.  (DE 92-2 ("APA"), § 1.1-

1.4.)  Meer claims that Anda and Daniel structured the purchase as an "asset sale,"

whereby Meer would purchase DC Group's asserts "but would not be liable for any

liabilities unless they were expressly disclosed and made a part of the asset purchase

agreement."  (*Id.* § 1.3)  However, B&B now alleges, based on Anda's sworn testimony,

that it was not a true asset sale, and further, that it does not fully represent the intent of

the parties. (Amend. Comp. ¶¶ 40-41; *see also* Opposition Brief, at 10-11.)

>   Section 1.3 of the APA states that Meer
>
>   "shall assume only the liabilities and obligations…set forth on Schedule 1.1(d)
>   and certain liabilities set forth on Schedule 1.3 ("the Assumed Liabilities").
>   Other than the Assumed Liabilities, [Meer] shall not assume or undertake to
>   assume and shall have no responsibility for any other obligations or liabilities of
>   Seller of any kind ("the Excluded Liabilities").  The Excluded Liabilities shall
>   include…any amounts owing to the Unique Companies…" (APA § 1.3.)

B&B Jewelry claims that before the agreement was signed, Anda disclosed to

Daniel and Michael the relevant contracts and the amount owed to B&B Jewelry under

the oral agreement. (Amend. Compl. ¶ 42.)  B&B Jewelry alleges that as a result, Meer

was aware of the terms of and outstanding balances on each loan. (*Id.*)  B&B Jewelry

further alleges that Anda, Daniel, and Michael agreed orally that none of the loans due

to B&B Jewelry would be listed in the schedule of liabilities attached to the APA, and

that Daniel expressly agreed that Meer would assume all of B&B Jewelry's liabilities as

part of the purported asset sale. (*Id.* ¶ 43.) B&B Jewelry contends that Anda gave copies of the agreements to both Daniel and Michael and that Michael "insisted" the loans be excluded from the schedule of liabilities. (*Id.* ¶¶ 45-48.)

B&B Jewelry alleges that "all or substantially all of the assets of DC Group were transferred to Meer," noting that since the closing in 2016, Meer has:

> stepped into the shoes of DC Group in all material ways: (a) it retained nearly all of 200 of DC Group's employees who continue to work under the same agreement; (b) it retained nearly all of the management of Unique Settings; (c) it has kept the business name and made only the slightest change from "Unique Settings *of* New York" to "Unique Settings New York,"; (d) it maintains the same physical locations, offices, and retail spaces as DC Group, using the same manufacturing plant, office, and showroom; (e) it uses the same vendors and day-to-day contacts for goods and services; and (f) there is a continuity of assets as Meer Enterprises has taken over all or substantially all of DC Group's assets, including but not limited to, its offices, facilities, equipment, computers, files, and customer and vendor lists. (Amend. Compl. ¶¶ 46, 49.)

## C. Post-Closing

Shortly after the closing, Anda contacted Bekdas to advise him that he had sold the company's assets to Meer. (Amend. Compl. ¶ 51.) Anda told him "don't worry," as Daniel would fully repay the loans. (*Id.*) Anda gave him Daniel's cell phone number and encouraged him to reach out because he was "expecting" his call. (*Id.*) In June 2016, Bekdas called Daniel, who acknowledged the loans owed to B&B Jewelry but expressed that "he needed more time to figure things out." (*Id.* ¶ 53.)

Around the same time, Daniel paid another one of DC Group's creditors $50,000 and promised that Meer would continue these payments for several weeks until the debt

was satisfied.  (*Id.* ¶ 54.)  Daniel failed to make additional payments but assured this other creditor he would—again explaining that he "needed more time."  (*Id.*)

Between June and October 2016, Bekdas made multiple efforts to collect the money owed under the loans. (Amend. Compl. ¶ 55.)  At no point during this period did Daniel deny knowledge of the loans or disavow that Meer was responsible for their re-payment.  (*Id.*)   In late October 2016, at a face-to-face meeting between the Dabakarov brothers and Bekdas in an accountant's office, Daniel acknowledged that "he was aware of *all* the loans owed to B&B Jewelry."  (*Id.* ¶ 56.)  Daniel reiterated he needed more time, stating that he expected business would pick up over the Christmas holiday.  (*Id.*)  He promised they would speak again in the new year.  (*Id.*)  On September 1, 2017, B&B Jewelry made a formal written demand of payment to Meer, which again went unpaid.  (*Id.* ¶¶ 57-58.)  Despite repeated demands, the loans remain unpaid.  (*Id.* ¶ 58.)

On May 28, 2019, B&B Jewelry filed this lawsuit, asserting ten causes of action against Meer.[2]  The first seven counts are directed against Meer in its capacity as successor-in-interest, asserting:  successor-in-interest liability (count 1); breach of contract (counts 2-4); and unjust enrichment (counts 5-7).  (Amend. Compl. ¶¶ 59-98.)  It also brings third-party beneficiary claims against Meer  (counts 8-10).  (*Id.* ¶¶ 106-

---

[2] B&B Jewelry also sued DC Group for breach of contract  (count 11), which is not challenged here.  (Amend. Compl. ¶¶ 135-142.)

134.)  The pending motion (DE 92, 100) is directed at all ten causes of action alleged against Meer.  B&B Jewelry opposes. (DE 96.)

## III.  Legal Standard

### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To determine whether a complaint states a cause of action sufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6), the Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "'[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements'" are all disregarded.  *Id.* at 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citations omitted).

### B.  Consideration of the APA on a Rule 12(b)(6) Motion

When reviewing a Rule 12(b)(6) motion, the Court may only consider the facts alleged in the pleadings, documents attached thereto as exhibits, and matters of judicial notice.  *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  If additional materials outside the pleadings are presented and the Court

incorporates those materials into its analysis, the Rule 12(b)(6) motion will be converted, upon notice to the parties, into a summary judgment motion pursuant to Rule 56. *See* Fed. R. Civ. P. 12(d), 56; *see also Slippi-Mensah v. Mills*, 2016 WL 4820617, at *2 (D.N.J. Sept. 14, 2016) (Hillman, J.). However, as an exception to the general rule, the Court may consider a document "integral to or explicitly relied upon in the complaint…without converting the motion to dismiss into one for summary judgment." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d. Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litg.*, 114 F.3d 1410 (3d. Cir. 2017)). Meer contends, and B&B Jewelry does not dispute, that the APA is "integral to and ultimately forms the basis of [B&B Jewelry's] claims." (Moving Brief, at 8-9.) The Court agrees and will take the APA into consideration in deciding this motion.

C.   <u>Choice of Law</u>

As a preliminary matter, the parties agree that the Court need not address the choice of law analysis because both New York and New Jersey recognize the general rule and exceptions to successor liability that B&B Jewelry asserts in this case. With respect to the B&B Promissory Note, the parties agree that it contains a New Jersey choice of law provision. Regarding the claims asserted in counts eight through ten, Meer Argues that because the APA contains a New York choice of law provision (APA § 5.8), these claims are governed by New York law. (Moving Brief, at 15.) B&B Jewelry does not oppose this argument and cites to New York law in its brief. The Court agrees such application is appropriate.

## IV.    Discussion

### A.    Meer's Alleged Successor Liability

Ordinarily, "when a company sells its assets the purchasing company is not liable for the seller's debts and liabilities." *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69 (3d Cir.1993); *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 340 (1981); *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244, 464 (1983).   There are four exceptions to this general rule of successor liability, arising where: (i) the purchaser expressly or implicitly agrees to assume the other company's debts and obligations; (ii) the purchase is a *de facto* consolidation or merger; (iii) the purchaser is a mere continuation of the seller; or (iv) the transfer of assets is for the fraudulent purpose of escaping liability.  *Colman v. Fisher-Price, Inc.*, 954 F.Supp. 835, 838 (D.N.J. Oct. 16, 1996) (Simandle, J.) (quoting *Ramirez* 86 N.J. at 340-41); *Schumacher*, 59 N.Y.2d at 245.   B&B Jewelry relies on this first exception.

In moving for dismissal, Meer argues that B&B Jewelry's debts were specifically excluded from the APA's schedule of included liabilities, and therefore, could not have been expressly or impliedly assumed.  (Moving Brief, at 9.)  It further argues that the parol evidence rule bars the admission of any earlier or contemporaneous oral statements that vary the terms of the agreement and that a payment Meer made to a different creditor does not create successor liability.

Under the APA's express disclaimer of liability, Meer argues it undertook only the "Assumed Liabilities," a listed group that does not include the B&B Jewelry loans,

and did not assume "Excluded Liabilities," which are all those obligations not part of the "Assumed Liabilities" list.  (APA § 1.1, 1.3.; Moving Brief, at 7, 10.) Meer further relies on the APA's integration clause, which states that it is the "entire agreement between the parties and supersedes any and all prior agreements…and may not be amended except in writing signed by the party to be bound."  (Moving Brief, at 10-11; APA §5.17).

"Such express disclaimers can carry great weight, particularly as to a finding of express assumption of liabilities."  *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 40 Misc.3d 643, 675 (Sup. Ct. 2013) (citing *Wensing v. Paris Indus.*, 158 AD.2d 164, 166-67 (3d Dept. 1990); *see also Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 150 A.D.3d 490, 492 (3d Dept. 2017) ("Thus, there can be no implied assumption of liabilities based on post-contractual statements or conduct that falls short of a new written contractual undertaking .")[3]  Here, the APA sets forth a list of the liabilities that Meer assumed. This does not end the inquiry, however. "[W]here evidence is introduced demonstrating

---

[3] Meer cites to a number of cases where courts found that express disclaimers, comparable to the one contained in the APA here, precluded a finding of express or implied assumption of liabilities by the alleged successor. The Court notes that these cases can be distinguished both factually and procedurally—most were decided at the summary judgment stage, at which time the Court had a fuller record than is available here. Critically, in some cases, there were no allegations of underlying conduct demonstrating an intent to assume liability.  For example, in *Oorah*, which was decided at the summary judgment stage, the appellate court affirmed the trial court, which had found no liability, but noted that plaintiffs had failed to allege facts demonstrating the intent of the purported successor to pay its debts.  *See Oorah, Inc. v. Covista Commc'ns, Inc.*, 139 A.D.3d 444, 445, (1st Dept. 2016); *Oorah, Inc. v. Covista Commc'ns*, Inc., 2014 WL 4787289, at *6 (N.Y. Sup. Ct. Sep. 25, 2014) (finding there to be "no factual pleadings as to the conduct or representation [of the party] demonstrating an intention to pay [its] debts.").  In contrast, making all inferences in B&B Jewelry's favor, it has sufficiently alleged that Meer's conduct and representations demonstrate its intent to pay the debts owed.

an intent by the asset buyer to pay the debts of the seller, express disclaimers do not preclude a finding of implied assumption of liabilities." *MBIA*, at 675-676; *see also Marenyi v. Packard Press Corp.*, 1994 WL 16000129, at *6 (S.D.N.Y June 9, 2004). As to the quality of the evidence, "[w]hile no precise rule governs the finding of implied liability, the authorities suggest that the conduct or representations relied upon by the party asserting liability must indicate an intention on the part of the buyer to pay the debts of the seller." *Ladjevardian v. Laidlaw–Coggeshall, Inc.,* 431 F.Supp. 834, 839 (S.D.N.Y.1974). A "finding of implied assumption is more likely" when the asset seller is left as a "mere shell" as a result of the sale, creating the "real possibility" that creditors are "left without a remedy." *Ladjevardian,* 431 F.Supp. at 839–40. Thus, the buyer's intent to answer for the seller's debts may be demonstrated by: "(1) admissions of liability by officers or other spokesmen of the buyer, as well as (2) the effect of the transfer upon creditors of the seller corporation."[4] *MBIA*, 40 Misc.3d at 676 (citing *Marenyi*, 1994 WL 16000129, at *6).

To demonstrate admissions of liability by Meer officers, B&B Jewelry has alleged that, when the APA was signed, Daniel agreed orally that Meer would pay DC Group's debts, but that they would not be listed on the schedule of liabilities. (Amend. Compl. ¶ 43.) When Bekdas reached out to Daniel after the closing, Daniel acknowledged the

---

[4] Some courts addressing whether liabilities have been impliedly assumed have not considered this second factor, in part, it appears, because the fourth exception to the general rule of successor liability already captures fraudulent transfer cases. *See Sweatland v. Park Corp.,* 181 A.D.2d 243, 245, (4th Dept 1992); *Wensing v. Paris Industries–New York,* 158 A.D.2d 164, 166–67, (3d Dept 1990).

loans and assured him they would be paid, heading he "needed more time to figure things out." (*Id.* ⁋ 53.)   Later, at a face-to-face meeting in October 2016, both the Dabakarovs acknowledged the existence of the loans and Daniel reiterated that he needed more time and stated that he expected business to pick up after the holidays. (*Id.* ⁋ 56.)[5]   Making all reasonable inferences in B&B Jewelry's favor, as the Court is required to do at this stage, the Court finds that the complaint plausibly sets forth admissions of liability by Meer officers indicating their intent to accept liability.

The second inquiry examines the effect of the transfer on the creditor of the seller corporation, and here the Court takes note of B&B's allegations that DC Group transferred all or substantially all of its assets, goodwill, business, and operations to Meer, leaving DC Group  "a mere shell" unable to pay its creditors.  (Opposition Brief, at 14-15; *see* Amend. Compl. ⁋ 49.)   B&B Jewelry has alleged, for example, that, following the sale, DC Group "ceased all business and operations, no longer operates a jewelry business, and has limited and/or no assets." (*Id.* ¶ 50.)  The Court finds that

---

[5] B&B Jewelry also contends that Daniel's payment of $50,000 to another of DC Group's creditor's that was not included on the schedule of assumed liabilities indicates that Meer expressly and impliedly assumed all of DC Group's debts.  This fact is not sufficient in of itself to establish liability; "the mere fact that the new corporation has voluntarily paid some of the debts of the old corporation is no ground for inferring that it assumed the latter's debts."  15 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7124); *see also  Glynwed, Inc. v. Plastirnatic, Inc.,* 869 F. Supp. 265, 275 (D.N.J. 1994) (Bassler, J.); *Innovative Design & Bldg. Servs., LLC v. Arch Ins. Co.,* 2014 WL 4770098, at *7 (S.D.N.Y. Sept. 23, 2014).

B&B Jewelry has sufficiently alleged the negative consequences it suffered as a result of the sale.[6]

The Court is not persuaded by Meer's reliance on the provision of the APA that says it excludes certain liabilities. This does not wash out the multiple statements attributed to an officer indicating Meer's intent to pay these debts or the negative effect on B&B Jewelry of the transfer to Meer. Thus, the Court finds that B&B Jewelry has plausibly alleged that Meer impliedly assumed DC Group's liabilities as a successor-in-interest and, accordingly, Meer's motion to dismiss counts one through seven on those grounds is denied.

### B.    Application of the Statute of Frauds

Meer also has contended that any oral agreements it purportedly entered into to pay B&B Jewelry's debts are unenforceable under the statute of frauds, which requires that certain types of contracts are in writing. (Moving Brief, at 12.) As such, Meer argues that counts two through seven should be dismissed.

Under New York law, an oral promise to guarantee the debt of another is unenforceable under the statute of frauds unless it is "(1) supported by new

---

[6] Meer argues that the evidence should be excluded under the parol evidence rule, which "bars admission of antecedent or contemporaneous oral representations to vary or add to the terms of a written agreement." *SAA-A, Inc. V. Morgan Stanley Dean Witter & Co.*, 721 N.Y.S.2d 640, 642 (1st Dep't 2001); *CPS Medmanagement LLC, v. Bergen Regional Medical Center, L.P.*, 940 F. Supp. 2d 141, 155 (D.N.J. 2013). The Court is not construing or interpreting the language of the APA under New York or New Jersey law. Rather, the Court is looking beyond the APA to determine whether Meer assumed these responsibilities under a successor liability theory.

consideration moving to the promisor and beneficial to him, and (2) the promisor has become in the intention of the parties a principal debtor primarily liable." *See Carey & Assocs. v. Ernst*, 27 A.D.3d 261, 263 (2006); *see also* NY Gen. Oblig. L. § 5–701(a)(2). New Jersey law also requires that promise to pay the debts of another be in writing. N.J.S.A. 25:1-15.  However, an exception to this rule exists where the "guarantor's principle motivation for taking on the debt is to serve his own interests." *See Sapta Glob., Inc. v. Cilicorp, LLC*, 2015 WL 1469600, at *5 (D.N.J. Mar. 30, 2015) (McNulty, J.) (citing *Howard M. Schoor Associates, Inc. v. Holmdel Heights Const. Co.*, 68 N.J. 95, (1975).

B&B Jewelry contends that it has not asserted a direct breach of contract claim against Meer based on oral promises Michael made to B&B Jewelry.  (Opposition Brief, at 16.)  Instead, it claims that it seeks to hold Meer accountable under a successor theory of liability because Meer assumed DC Group's liabilities.  (*Id.*)  It therefore argues that allegations that Meer acknowledged and promised to repay the loans is "*proof* and *evidence*" that it assumed the loans. (*Id.*)

While B&B Jewelry has not alleged the existence of a writing that states Meer will answer for B&B Jewelry's debts, it has alleged the existence of a written agreement with Meer's predecessor, DC Group.  Against this context discovery is necessary for the Court to resolve this issue.  To hold otherwise would limit the applicability of the implied assumption of liability doctrine of successor liability, which is premised on the lack of written contract holding a successor liable for the debts of its predecessor.

**C.**   **Enforceability of Incomplete B&B Promissory Note**

Meer also contends that the B&B Promissory Note is unenforceable because it omits material terms—the identity of the parties, the property to be transferred, the consideration and payment, and signatures of the parties are all missing from the document.  (Moving Brief, at 14-15.)  Meer thus contends that the agreement is too vague to be enforced and counts two, five, and eight should be dismissed.  (*Id.*)

Both parties note that under New Jersey law, courts focus on the performance promised in an agreement to determine whether the agreement is vague.  *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 163 N.J. Super 463 , 474 (App. Div. 1978) (internal quotations omitted) ("An agreement so deficient in the specification of its essential terms that the performance by each party cannot be ascertained with reasonable certainty is not a contract, and clearly is not an enforceable one.")  However, where there is an ambiguous contract and the parties have performed without objection, a court may infer what the parties agreed to based on their actions.  S*ee James v. Zurich-Am. Ins. Co. of Illinois*, 203 F.3d 250, 255 (3d Cir. 2000) (stating that where an agreement is silent on a particular term, a course of dealing may fill the void); *Twp. of White v. Castle Ridge Dev. Corp.*, 419 N.J. Super. 68, 76–77 (App. Div. 2011) (a court construing vague or ambiguous terms may imply reasonable missing terms or "receive evidence to provide a basis for such an implication").  "In particular, courts will look to, among other things, all the relevant circumstances surrounding the transaction, as well as

evidence of the parties' course of dealing, usage and course of performance." *Elliott & Frantz, Inc. v. Ingersoll–Rand Co.,* 457 F.3d 312, 328 (3d Cir. 2006).

The B&B Promissory Note does not identify B&B Jewelry or DC Group as the parties, does not list the money amount loaned, does not contain the consideration given or payment owed, and was not signed by Bekdas or any other principal of B&B Jewelry. (B&B Promissory Note.) The agreement, therefore, is not so much vague as it is lacking in basic details. However, B&B Jewelry alleges that in accordance with their agreement, DC Group made monthly payments of 250 grams of gold on this loan beginning in August 2012 until March 2016, just before it sold its assets to Meer. (Amend. Comp. ¶¶ 22-23, 33.) Thus, B&B Jewelry has alleged a sufficient course of dealing under this contract to support its allegations that the relevant parties intended to be bound. Accordingly, the Court finds that at this stage of the proceedings, B&B Jewelry has adequately alleged that an enforceable contract exists.

## D.   <u>Third-Party Beneficiary Claims</u>

Meer argues that counts eight, nine, and ten should be dismissed because B&B Jewelry cannot recover as a third-party beneficiary of the alleged oral agreement between Meer and DC Group made prior to the execution of the APA. (Moving Brief, at 15.) A non-party can only maintain a cause of action alleging breach of contract if it is an intended beneficiary of the contract. *East Coast Athletic Club, Inc. v. Chicago Tit. Ins. Co.,* 39 A.D. 3d 461, 463 (2d Dept. 2007). However, "the identity of a third-party beneficiary need not be set forth in the contract or, for that matter, even be known as

17

of the time of its execution." *Encore Lake Grove Homeowners Assn., Inc. v. Cashin Assoc.,*
*P.C.*, 111 AD3d 881, 883 (2d Dept. 2013) (internal quotations omitted).  Thus, to
establish a third party beneficiary claim, a party must allege: "(1) the existence of a valid
and binding contract between other parties, (2) that the contract was intended for its
benefit, and (3) that the benefit to it is sufficiently immediate, rather than incidental, to
indicate the assumption by the contracting parties of a duty to compensate it if the
benefit is lost."  *Bd. of Managers of 100 Cong. Condo. v. SDS Cong., LLC*, 152 A.D.3d 478,
480, 59 N.Y.S.3d 381 (2017).  To determine third-party beneficiary status, the Court
may "look at the surrounding circumstances as well as the agreement."  *Encore Lake,*
111 A.D.3d. at 882 (internal quotations omitted).

Meer contends that B&B Jewelry's claims are conclusory, that they "merely
restate the elements of their alleged third-party beneficiary claims."  (Moving Brief at
15-16).  In particular, Meer challenges this first element and argues that these claims
must be dismissed because they are predicated on unenforceable oral agreements
between Meer and DC Group.  (*Id.* at 16.)

The Court disagrees.  Taking the allegations in the complaint as true and
affording every favorable inference, B&B Jewelry has plausibly alleged sufficient facts
to support a claim as an intended third-party beneficiary. With respect to the first
element, whether there is a valid, enforceable agreement, for the reasons stated earlier
the Court will not foreclose the existence of an enforceable contract at this stage.
Specifically, B&B Jewelry alleges that "Anda and [Daniel]…agreed that Meer

Enterprises would assume the liabilities of DC Group that would be incorporated into the purchase price" (Amend. Compl. ⁋ 41); that "Meer enterprises agreed to assume…the liabilities to B&B Jewelry" (*Id.* ⁋ 42); and that although the Dabakarov brothers and Anda "agreed that none of the loans and/or amounts due to B&B Jewelry" would be listed on the schedule of liabilities in the APA, Daniel nonetheless "acknowledged the amounts owed to B&B Jewelry…and expressly agreed that Meer [ ] would assume all of the liabilities to B&B Jewelry." (*Id.* ¶ 43.)  With respect to the third element, B&B has alleged the benefit of Meer assuming its loans was sufficiently immediate—plaintiffs have alleged that Anda disclosed the defaulted loans and accompanying documents to Meer.  (Amend. Compl. ¶¶ 42, 46.)  As such, the Court denies Meer's motion to dismiss counts eight through ten.

## V.    <u>Conclusion</u>

For the foregoing reasons, the Court denies Meer's motion to dismiss counts one through ten of the amended complaint.  An appropriate order will follow.

<u>/s/ Katharine S. Hayden</u>

Date: August 28, 2020                          Katharine S. Hayden, U.S.D.J.